IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HUGO ARMANDO AZCAÑO CARRILLO   &ast;
 9018 Hemsley Drive        &ast;
 Clinton, MD 20735        &ast;
            &ast;
SAUL MOLINA CHAVIVA      &ast;
 4304 Falmer PL         &ast;
 Fort Washington, MD 20744    &ast;
            &ast;
and             &ast;
            &ast;
EDGAR CARRANZA ESPINAL    &ast;
 5728 Janice Lane        &ast;
 Temple Hills, MD 20748-4745   &ast;
            &ast;
   Plaintiffs,       &ast;
            &ast;
   v.          &ast;  Case No. _____
            &ast;
DANDAN, INC.         &ast;
 Serve: Najwa Dandan     &ast;
 14033 Marblestone Dr.     &ast;
 Clifton, VA 20124       &ast;
            &ast;
GEORGE DANDAN       &ast;
 14033 Marblestone Dr.     &ast;
 Clifton VA 22024       &ast;
            &ast;
and             &ast;
            &ast;
TONY KAYAL         &ast;
 14033 Marblestone Dr.     &ast;
 Clifton VA 22024       &ast;
            &ast;
   Defendants.      &ast;
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

   Plaintiffs, Hugo A. Azcaño Carrillo, Saul Molina Chaviva, and Edgar Carranza Espinal

("Plaintiffs"), by and through their undersigned counsel, hereby submit this Complaint against

Defendants, Dandan Inc., George Dandan, and Tony Kayal ("Defendants"), for violations of the

Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq*. (hereinafter "FLSA"), the Washington D.C. Wage and Hour Law, D.C. Code § 32-1001 *et. seq.* (hereinafter "DCWHL"), and the Washington D.C. Payment and Collection of Wages Act, D.C. Code § 32-1301 ("DCPCWA").

## PARTIES, JURISDICTION, AND TOLLING

1.      Plaintiffs are over twenty-one years of age and residents of the State of Maryland. Plaintiffs consents to participate as party Plaintiffs in an FLSA case are attached hereto as Exhibit 1.

2.      George Dandan is over twenty-one years of age and, upon information and belief, a resident of the State of Virginia.

3.      Tony Kayal is over twenty-one years of age and, upon information and belief, a resident of the State of Virginia.

4.      Dandan, Inc. ("Dandan") is a corporation formed under the laws of the State of Virginia with its principal office in Fairfax, Virginia.

5.      At all times relevant to this action - May 9, 2010 through the May 9, 2013 – Dandan continuously operated in the District of Columbia.  During this time, the vast majority of the work that Defendants performed was in the District of Columbia.  The Plaintiffs almost exclusively worked in the District of Columbia.

6.      At all times relevant, Defendants were engaged in commerce or in the production of goods for commerce within the meaning of the FLSA - 29 U.S.C. § 203(s)(l).

7.      At all times relevant, Defendants qualified as an "enterprise" within the meaning of the FLSA - 29 U.S.C. § 203(r).

8.      At all times relevant, Defendants employed two or employees who handled goods that had previously moved through commerce.

9.      At all times relevant, Defendants have had an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

10.     This Court has jurisdiction over Defendants pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b), and 28 U.S.C. § 1337 relating to "any civil action or proceeding arising under any act of Congress regulating commerce." Subject matter jurisdiction is invoked under 28 U.S.C. § 1331 - Federal Question.

11.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## FACTS

12.     At all times during the relevant period, George Dandan was the manager and, upon information and belief, the owner of Dandan.

a.      At all times during the period of Plaintiffs' employment, George Dandan had the power to hire, fire, suspend, and otherwise discipline Plaintiffs.

b.      At all times during the period of Plaintiffs' employment, George Dandan supervised the work duties of Plaintiffs to ensure their work was of sufficient quality.

c.      At all times during the period of Plaintiffs' employment, George Dandan set and controlled the work schedule of Plaintiffs or had the power to set and control Plaintiffs' work schedule.

d.      At all times during the period of Plaintiffs' employment, George Dandan set and determined the rate and method of pay of Plaintiffs or had the power to set and determine the rate and method of Plaintiffs' pay.

e.     At all times during the period of Plaintiffs' employment, George Dandan controlled, and was in charge of, the day-to-day operations of Dandan.

13.     At all times relevant to this matter, Tony Kayal was the co-manager of Dandan. Upon information and belief, Tony Kayal is the nephew of George Dandan.

a.     At all times during the period of Plaintiffs' employment, Tony Kayal had the power to hire, fire, suspend, and otherwise discipline Plaintiffs.

b.     At all times during the period of Plaintiffs' employment, Tony Kayal supervised the work duties of Plaintiffs to ensure their work was of sufficient quality.

c.     At all times during the period of Plaintiffs' employment, Tony Kayal set and controlled the work schedule of Plaintiffs or had the power to set and control Plaintiffs' work schedule.

d.     At all times during the period of Plaintiffs' employment, Tony Kayal set and determined the rate and method of pay of Plaintiffs or had the power to set and determine the rate and method of Plaintiffs' pay.

e.     At all times during the period of Plaintiffs' employment, Tony Kayal controlled, and was in charge of, the day-to-day operations of Dandan.

14.     Saul Molina Chaviva worked for Defendants from roughly February 1, 2012 to April 20, 2013. He worked as a flagman and a foreman. From roughly February 1, 2012 to August 2012, Defendants paid Mr. Molina Chaviva $12.00 per hour. From roughly August 2012 to April 20, 2013, Defendants paid him $13.00 per hour.

a.     From roughly February 1, 2012 to October 15, 2012, Saul Molina Chaviva typically and customarily worked, on average, about forty-eight (48) hours per week.

b.      During this time, Defendants had knowledge that Mr. Molina Chaviva worked, on average, about forty-eight (48) hours per week or suffered or permitted him to work about forty-eight (48) hours per week.

c.      At all times throughout the course of Mr. Molina Chaviva's employment, Defendants paid him straight pay at his regular hourly rate for all hours worked each week, including overtime hours worked each week in excess of forty (40).  At no time during Mr. Molina Chaviva's employment did Defendants pay him at the rate of one-and-one-half (1½) times his regular rate of pay for hours worked each week in excess of forty (40).

15.    Edgar Corroinza Espinal worked for Defendants from roughly July 12, 2011 to September 12, 2012.  During that time, he worked as a foreman and a flagger.  From roughly July 12, 2011 to August 2011, Defendants paid Mr. Espinal $9.00 per hour.  From roughly August 2011 to March 2012, Defendants paid Mr. Espinal $12.00 per hour.  From roughly March 2012 to September 11, 2012, Defendants paid Mr. Espinal $13.00 per hour.

a.      At all times throughout the course of his employment, Edgar Corroinza Espinal typically and customarily worked, on average, about fifty (50) hours per week.

b.      At all times throughout the course of Mr. Espinal's employment, Defendants had knowledge that he typically worked about fifty (50) hours per week or suffered or permitted him to work about fifty (50) hours per week.

c.      At all times throughout the course of Mr. Espinal's employment, Defendants paid him straight pay at his regular hourly rate for all hours worked each week including overtime hours worked each week in excess of forty (40).  At no time during his

employment did Defendants pay Espinal at the rate of one-and-one-half (1½) times his regular rate of pay for hours worked each week in excess of forty (40).

d.     Additionally, Defendants failed to pay Mr. Espinal for many of the hours that he worked and reported to Defendants. Defendants illegally failed to pay Mr. Espinal roughly three (3) hours per week.

16.     Hugo Armando Azcano Carillo worked for Defendants from roughly October 15, 2011 to September 11, 2012 as a flagman. From roughly October 15, 2011 to January 2012, Defendants paid Mr. Hugo Armando Azcano Carillo $12.00 per hour. From roughly January 2012 to September 11, 2012 Defendants paid Mr. Carillo $13.00 per hour.

a.     At all times throughout the course of his employment, Hugo Armando Azcano Carillo typically and customarily worked, on average, about forty-seven (47) hours per week.

b.     At all times throughout the course of Mr. Carillo's employment, Defendants had knowledge that Mr. Carillo typically worked, on average, about forty-seven (47) hours per week or suffered or permitted Plaintiff to work about forty-seven (47) hours per week.

c.     At all times throughout the course of his employment, Defendants paid Mr. Carillo straight pay at his regular hourly rate for all hours worked each week including overtime hours worked each week in excess of forty (40). At no time during his employment did Defendants pay Mr. Carillo at the rate of one-and-one-half (1½) times his regular rate of pay for hours worked each week in excess of forty (40).

d.     Additionally, Defendants failed to pay Mr. Carillo for many of the hours that he worked and reported to Defendants. Mr. Carillo complained several times about this

wage theft. Despite Mr. Carillo's repeated complaints, Defendants failed to pay Mr. Carillo for roughly 50 hours that he worked

17.     At no time did Plaintiffs perform work that meets the definition of exempt work under the FLSA, the DCWHL, or the DCPCWA.

18.     No bona fide dispute exists as to whether Defendants owe Plaintiffs the wages outlined herein.

19.     Defendants' failure to pay Plaintiffs overtime, as required by the FLSA and the DCWHL, was willful, intentional, and not in good faith.

## CAUSES OF ACTION

### COUNT I
### Violation of Federal Fair Labor Standards Act
### (Overtime)

20.     Plaintiffs reallege and reassert each and every allegation set forth in the paragraphs above, as if each were set forth herein.

21.     Section 207(a)(1) of the FLSA provides that "no employer shall employ any of his employees…for a workweek longer than forty (40) hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one-and-one-half (1½) times the regular rate at which he is employed."

22.     Plaintiffs were "employees" covered by the FLSA, 29 U.S.C. § 207(a)(1).

23.     Defendants were the "employers" of Plaintiffs under the FLSA, 29 U.S.C. § 207(a)(2).

24.     Defendants were obligated to compensate the Plaintiffs at the overtime rate of one-and-one-half (1½) times their regular rate for all hours worked per week in excess of forty (40).

25.     As set forth above, while in Defendants' employ, Plaintiffs worked many overtime hours.

26.     As set forth above, while in Defendants' employ, Defendants failed and refused to compensate Plaintiffs at the FLSA required overtime rate equal to one-and-one-half (1½) times their regularly hourly rate for overtime hours worked each week.

27.     Defendants' failure and refusal to pay Plaintiffs as required by the FLSA was willful and intentional, and was not in good faith.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiffs under Count I for all unpaid overtime wages in such amounts as are proven at trial, plus an equal amount in liquidated damages, interest (both pre- and post- judgment), reasonable attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate.

## COUNT II
### Violation of Washington, D.C. Wage and Hour Law
### (Overtime)

28.     Plaintiffs reallege and incorporate herein the allegations contained in the paragraphs above.

29.     At all times relevant to this Complaint, Defendants violated the Overtime Provisions of the District of Columbia Wage and Hour Law by failing to pay Plaintiffs the time and a half for all hours Plaintiffs worked over forty (40) that he worked in a particular workweek.

30.     Defendants were, at all times relevant to this complaint, "employers" of Plaintiffs within the meaning of the DCWHL.

31.     Plaintiffs worked over 40 hours per week, virtually every week, during the time Plaintiffs worked for Defendants.

8

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiffs under Count II for all unpaid overtime wages in such amounts as are proven at trial, plus an equal amount in liquidated damages, interest (both pre- and post- judgment), reasonable attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate.

## COUNT III
### Violations of the District of Columbia
### Payment and Collection of Wages Act

32.     Plaintiffs reallege and incorporate herein the allegations contained in the paragraphs above.

33.     Plaintiffs were "employees" of Defendants, pursuant to D.C. Code § 32-1301 of the DCPCWA.

34.     Defendants were "employers" of Plaintiffs pursuant to D.C. Code § 32-1301 of the DCPCWA.

35.     Defendants, as Plaintiffs' employer, were obligated to pay them all wages due to them for the work that they performed.

36.     As detailed above, Defendants failed to pay Mr. Hugo Armando Azcaño Carrillo and Mr. Edgar Carranza Espinal for all hours that they worked.

37.     Additionally, Defendants failed to compensate Plaintiffs at a rate of time and a half for the hours Plaintiffs worked over forty in each week, as required by the FLSA and the DCWHL.

38.     Defendants owe Plaintiffs those wages by virtue of DCPCWA.

WHEREFORE, Plaintiffs pray that Judgment be entered against the Defendants,

a.  For two times the amount of unpaid wages due to Plaintiffs;

b.  For attorneys' fees, costs, and expenses of this action as a result of Defendants'

failure to pay Plaintiffs;

      c.     For such other further relief as this Court may deem appropriate.

Respectfully submitted,

Michael K. Amster
Bar Number: 1001110
Amster Law Firm, LLC
200-A Monroe Street, Suite 305
Rockville, MD 20850
Telephone: 240-428-1053
Fax: 301-424-8732
mamster@amsterfirm.com

Deyka Williams Spencer
The Spencer Firm, LLC.
Bar Number: 979180
200-A Monroe Street, Suite 305
Rockville, MD 20850
Telephone: 301-637-2866
Fax: 866-686-2126
dspencer@spencer-firm.com