HUGO ARMANDO AZCANO CARRILLO,
*et al.*,

                Plaintiffs,

                v.

DANDAN INC., *et al.*,

                Defendants.

Civil Action No. 13-671 (BAH)

Judge Beryl A. Howell

## MEMORANDUM OPINION

The plaintiffs in this matter, Hugo A. Azcano Carrillo and Saul Molina Chaviva

(collectively, "the plaintiffs"), allege that the defendants, Dandan, Inc., George Dandan, and

Tony Kayal (collectively, "the defendants"), violated the Fair Labor Standards Act ("FLSA"), 29

U.S.C. § 207(a)(1), the District of Columbia Minimum Wage Act ("DCMWA"), D.C. Code. §

32-1001 *et seq.*, and the District of Columbia Payment and Collection of Wages Act

("DCPCWA"), D.C. Code § 32-1301 *et seq.*, by failing to abide by the overtime requirements set

out in those laws. *See generally* Compl., ECF No. 1. Pending before the Court is the parties'

Joint Motion to Approve Settlement Agreement ("Mot."), ECF No. 23.[1] The Court grants the

motion in part and dismisses this suit under Federal Rule of Civil Procedure 41(a)(1).

## I. BACKGROUND

The plaintiffs were "flagmen" for the Defendant Dandan, Inc., "a position which required

them to travel to various locations around Washington, D.C. to control and regulate the flow of

traffic on and around construction sites." Mot. at 1. During their period of employment, the

---

[1] The parties filed a Joint Waiver of Hearing Regarding Joint Motion to Approve Settlement Agreement, ECF No. 24, "to avoid increased attorney's fees and costs associated with the continued litigation of this already settled matter." *Id.* at 1. The Court accepts the parties' waiver.

plaintiffs were paid between $9.00 and $13.00 an hour. *Id.* The plaintiffs allege that Plaintiff

Carillo "worked, on average, about 47 hours per week without receiving overtime

compensation[,]" and that Plaintiff Chaviva "worked, on average, about 48 hours per week

without receiving overtime compensation." *Id.* at 2. The defendants deny these allegations or, in

the alternative, argue that, assuming overtime wages or other compensation was due to the

plaintiffs, "the amounts presented by Plaintiffs were drastically overstated and did not accurately

reflect the number of hours actually worked." *Id.*

The plaintiffs filed suit in this Court on May 9, 2013, seeking the unpaid overtime wages

and liquidated damages—totaling twice the amount allegedly owed by the defendants—as well

as attorneys' fees. Compl. ¶¶ 27, 31, 38. After the parties indicated that they were amenable to

alternative dispute resolution, *see* Joint Status Report ¶ 5, ECF No. 13, this Court referred them

to this District's Mediation Program. *See* Order at 1, Nov. 19, 2013, ECF No. 14; *see also* LCvR

84.4. Following "two months of mediation . . . the parties agreed to settle the matter for $7,000

in damages to the Plaintiffs." Mot. at 4.

The Settlement Agreement ("Agreement"), ECF No. 23-1, provides for the plaintiffs to

be paid $15,500 "in full satisfaction of all claims arising under or related to" the claims alleged

in this lawsuit, "including claims for attorneys' fees and costs and liquidated damages."

Agreement ¶ 1(a). The Agreement contains a sweeping release of liability by the plaintiffs,

stating that they "discharge the Defendants . . . from any and all liabilities, claims, debts,

demands, rights of action or causes of action at law or in equity Plaintiffs had, have or may have

against any of the [defendants and related entities]," including claims arising under Title VII of

the Civil Rights Act, "the Americans with Disabilities Act, the Family Medical Leave Act, the

Fair Labor Standards Act, the Equal Pay Act or any other local, state, or federal statutes or

regulations regulating Plaintiffs' employment relationship with Defendants." *Id.* ¶ 4.  The

release goes on to include a further release for various common law claims, such as defamation,

wrongful discharge, and intentional infliction of emotional distress.  *Id.*  The waiver applies to

"claims that Plaintiffs know about and those claims that Plaintiffs may not know about that

occurred on or before the execution of this Agreement."  *Id.*

The Agreement includes an express denial of admission of liability, *id.*¶ 5, a "Mutual

Non-Disparagement" provision under which the parties agree not to make "negative or

derogatory statements" about each other, *id.*¶ 6, and a "Stay Away Provision" requiring the

plaintiffs to not communicate with and stay away from the defendants "and any person whom

[the plaintiffs] know work for Dandan, Inc. in any capacity," *id.*¶ 7.  Regarding attorneys' fees,

the "Defendants agreed to pay counsel for Plaintiffs a total of $8,500 for attorney's fees

incurred."  Mot. at 4; *see* Agreement ¶ 1(b)(iii) (agreeing that the defendants will issue a "check

in the amount of $8,500.00 for attorneys' fees, costs, and expenses" to the two law firms

involved in the case).

In support of the terms of the settlement agreement, the parties aver that they engaged in

"16 months of negotiation from the first time Plaintiffs contacted Defendants regarding their

claims," including "two months of formal mediation through the Court."  Mot. at 7.  The parties

subsequently moved this Court to approve the parties' settlement agreement and dismiss the

Complaint with prejudice.  *See* Mot. at 1.

## II.    DISCUSSION

In most instances, a settlement such as the one proposed by the parties does not require

court approval.  *See* FED. R. CIV. P. 41.  This matter, however, is brought under the FLSA which

was designed "to protect workers from the poor wages and long hours that can result from

significant inequalities in bargaining power between employers and employees." *Duprey v.*

*Scotts Co. LLC*, No. PWG-13-3496, 2014 WL 2174751, at \*2 (D. Md. May 23, 2014). As the

*Duprey* court noted, the FLSA's "provisions are mandatory and generally are not subject to

bargaining, waiver, or modification by contract or settlement." *Id.* (citing *Brooklyn Sav. Bank v.*

*O'Neil*, 324 U.S. 697, 706 (1945)). Therefore, it is helpful to first examine the ways in which

Federal Rule of Civil Procedure 41 and the FLSA interact with each other before proceeding to

evaluate the proposed Agreement.

## A. INTERACTION OF RULE 41 AND THE FLSA

Federal Rule of Civil Procedure 41(a)(1)(A) provides that "the plaintiff may dismiss an

action without a court order by filing . . . (ii) a stipulation of dismissal signed by all parties who

have appeared." Such voluntary dismissal by the parties is subject, however, to special

procedural requirements set out in certain enumerated rules (i.e., for class actions under Rule

23(e), derivative actions under Rule 23.1(c), actions related to unincorporated associations under

Rule 23.2, and actions involving receivers under Rule 66), as well as to "any applicable federal

statute." FED. R. CIV. P. 41(a)(1)(A).

In this case, the "applicable federal statute" is the FLSA, which provides a right of

private action for employees affected by a violation of the FLSA's minimum wage and overtime

requirements. *See* 29 U.S.C. § 216(b). Although the FLSA is silent about the procedures by

which an employee who institutes such a suit may—or may not—settle it, section 216(c) of the

FLSA authorizes the Secretary of Labor to "supervise the payment of the unpaid minimum

wages or the unpaid overtime compensation owing to any employee or employees under section

206 or section 207 of [the FLSA], and the agreement of any employee to accept such payment

shall upon payment in full constitute a waiver by such employee of any right he may have under

subsection (b) of [§ 216] to such unpaid minimum wages or unpaid overtime compensation and

an additional equal amount as liquidated damages." 29 U.S.C. § 216(c). In light of this statutory language, which refers only to the Secretary of Labor as being authorized to approve settlements regarding "the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employees," the applicability of Rule 41(a) has been the subject of debate among the lower courts. "There is no perfect answer for how to treat these private settlements [of FLSA cases], which meet at the intersection of the FLSA and Rule 41." *Picerni v. Bilingual Seit & Presch. Inc.*, 925 F. Supp. 2d 368, 373 (E.D.N.Y. 2013); *see also id*. at 378 (holding that the "FLSA is not exempt from the right of voluntary dismissal under Rule 41").

## B.     FLSA SETTLEMENTS

Early Supreme Court precedent recognized that settlements of FLSA claims had the potential to subvert congressional intent underpinning the FLSA to "protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce." *O'Neil*, 324 U.S. at 706. In *O'Neil*, the Supreme Court addressed several related cases raising the issue of whether employees subject to the terms of the FLSA could waive or release their right to receive liquidated damages from their employers. *Id.* at 698–99. In considering this question, the Court addressed the threshold issue of whether the "release was given in settlement of a bona fide dispute between the parties with respect to coverage or amount due under the Act or whether it constituted a mere waiver of [the employee's] right to liquidated damages." *Id.* at 703. The Supreme Court held that waiver of rights under the FLSA, in the absence of a bona fide dispute, did not bar a later claim to recover liquidated damages because allowing waiver of such rights would thwart legislative policy. *See id.* at 704. The *O'Neil* Court cautioned that its decision had "not necessitated a determination of what limitation, if any, [29 U.S.C. § 2]16(b) of the [FLSA] places on the validity of agreements between an employer and employee to settle claims arising

5

under the [FLSA] if the settlement is made as the result of a bona fide dispute between the two

parties, in consideration of a bona fide compromise and settlement." *Id.* at 714. Thus, *O'Neil*

makes clear that when there is no bona fide dispute over wages or damages owed, the statute's

protections for employees trump any purported settlement or waiver of the employees' rights to

bring suit for FLSA violations. *See id.*; *see also Barrentine v. Ark.-Best Freight Sys., Inc.*, 450

U.S. 728, 745 (1981) (holding that FLSA rights may be asserted even if wages were subject to

grievance process in collective bargaining agreement).

The year following *O'Neil*, the Supreme Court emphasized the significance of the

requisite bona fide dispute in evaluating the validity of an FLSA settlement in *D.A. Schulte, Inc.*

*v. Gangi*, 328 U.S. 108, 111 (1946). In that case, employees had admittedly worked overtime

hours for which they were not paid. *Id.* Before the employees brought suit, several of them

reached an agreement with the employer to receive their overtime wages—but not the liquidated

damages to which they were entitled—in return for a sealed release from further liability. *Id.* at

111-12. Those employees who signed the releases subsequently sued the employer for liquidated

damages. *Id.* at 112. Relying on its reasoning in *O'Neil*, the Supreme Court held that "neither

wages nor the damages for withholding them are capable of reduction by compromise of

controversies over coverage." *Id.* at 116. In other words, private settlements that purport to bar

further suit against an employer in exchange for less than the full value of the wages, overtime,

and liquidated damages, to which the employee is entitled under the FLSA, are invalid. *See id.*

The Supreme Court included in *Gangi* a footnote that discussed, in *dicta*, whether

"stipulated judgments" containing the waiver of employees' rights were enforceable in

"preventing the employee from seeking to recover more on the same claim." *Id.* at 113 n.8

(internal quotation marks and citation omitted). The Court opined that "[e]ven though stipulated

judgments may be obtained, where settlements are proposed in controversies between employers

and employees over violations of the [FLSA], by the simple device of filing suits and entering

agreed judgments," the Court believed that "the requirement of pleading the issues and

submitting the judgment to judicial scrutiny may differentiate stipulated judgments from

compromises by the parties." *Id.* The Court explicitly qualified its brief discussion of "the

suggestion of the petitioner" that such judgments would also be non-enforceable by

characterizing such "suggestion" as "argumentative only as no judgment was entered in this

case." *Id.*

The procedural posture of *O'Neil* and *Gangi* is notable, since neither case involved, as is

the situation in the instant matter, an *ex ante* attempt to gain judicial imprimatur for a settlement

negotiated by private parties. *See id.* at 111; *O'Neil*, 324 U.S. at 703–04. The two cases do not

address the interplay between the FLSA's limit on an employee's power to waive rights and the

mandates of Rule 41, which grants parties in litigation the power jointly to dismiss their cases

without a court assessment, let alone court approval. *See id.* Nor have any other cases before the

Supreme Court. *See Picerni*, 925 F. Supp. 2d at 371.

Thus consideration of the parties' motion raises two issues: first, whether judicial

approval of the parties' proposed settlement is required under the FLSA; and second, whether

judicial approval is warranted here. These issues are discussed separately below.

## C.     COURT APPROVAL OF FLSA SETTLEMENTS

The D.C. Circuit has not opined about whether judicial approval is required of FLSA

settlements reached after an FLSA suit has been filed or the related issue of whether such

approval is a prerequisite for subsequent judicial enforcement of a private settlement. Another

Judge in this District, citing Supreme Court precedent and the decisions of other Circuits, noted

that "[i]t is a long-held view that FLSA rights cannot be abridged or otherwise waived by

contract because such private settlements would allow parties to circumvent the purposes of the

statute by agreeing on sub-minimum wages." *Beard v. District of Columbia Hous. Auth.*, 584 F.

Supp. 2d 139, 143 (D.D.C. 2008) (citing *Gangi*, 328 U.S. at 116; *Barrentine*, 450 U.S. at 740;

*Taylor v. Progress Energy Inc.*, 493 F.3d 454, 460 (4th Cir. 2007), *superseded on other grounds*,

*Whiting v. Johns Hopkins Hosp.*, 416 F. App'x 312 (4th Cir. 2011); *Lynn's Food Stores, Inc. v.*

*United States* (*Lynn's Food*), 679 F.2d 1350, 1354 (11th Cir. 1982)).  In *Beard*, the court held

that an accord and satisfaction was an insufficient defense by the employer against an FLSA suit

filed by an employee.  *See id.* at 142 ("Here, an otherwise valid accord and satisfaction cannot be

a defense to the FLSA claim.").  The *Beard* court noted that settlement of an FLSA claim was

enforceable in only two circumstances: "a judicially approved stipulated judgment where the

employee files suit directly against the employer" or "when the Secretary of Labor supervises the

payment in full of a settlement reached between the employee and the employer."  *Id.* at 142 n.2

(citing *Lynn's Food*, 679 F.2d at 1352–53).  Since the employer in that case did "not argue that

either of these exceptions [was] applicable," however, the court had no reason to opine further

about these methods for settling an FLSA claim. *Id.*[2]

    *Beard* relied, in part, on the approach to this issue adopted by the Eleventh Circuit in

*Lynn's Food*.  In that case, an employer sought to enforce a private settlement of an FLSA claim

through a declaratory judgment action, which the district court rejected and the Eleventh Circuit

affirmed.  *Lynn's Food*, 679 F.2d at 1351–52, 1355.  The egregious facts presented in that case

involved an employer, who settled FLSA claims by offering the affected employees "$1000.00,

to be divided among them on a pro rata basis," in exchange for a waiver of any future claims

---

[2] In another FLSA case before this Court, the employees were granted an evidentiary hearing into the employer's
allegations that the parties had settled the dispute, at which hearing issues regarding the bona fide dispute between
the parties with a bearing on the terms of the proposed settlement presumably would be elicited. *See Quijano v.*
*Eagle Maint. Servs., Inc.*, 952 F. Supp. 1, 4 (D.D.C. 1997).  The Court did not expressly address whether judicial
approval of the settlement was a prerequisite for its enforceability. *See id.*

under the FLSA, despite a prior Department of Labor determination that the employer "was liable to its employees for back wages and liquidated damages[,]" in the amount of more than $10,000. *Id.* at 1352. The "employees seemed unaware that the Department of Labor had determined that [the employer] owed them back wages under the FLSA, or that they had any rights at all under the statute." *Id.* at 1354. Indeed, some of the employees in *Lynn's Food* had signed the waiver despite an inability to speak English. *Id.* The *Lynn's Food* court noted that "the transcript [of the settlement negotiations] provides a virtual catalog of the sort of practices which the FLSA was intended to prohibit." *Id.*

The *Lynn's Food* court drew two logical inferences from the Supreme Court's *Gangi dicta*: (1) because a stipulated judgment would require pleading the FLSA's elements and "submitting the judgment to judicial scrutiny," *Gangi*, 328 U.S. at 113 n.8, such a stipulated judgment *was* judicially enforceable; and (2) a stipulated judgment was allowed only in cases where there was a bona fide dispute over the amount owed under the FLSA, *see Lynn's Food*, 679 F.2d at 1353–54. Consequently, the Eleventh Circuit concluded that a settlement of an FLSA claim was enforceable in only two instances: (1) when the Secretary of Labor supervises payment of unpaid wages under § 216(c); or (2) when employees "present to the district court a proposed settlement, [and] the district court . . . enter[s] a stipulated judgment after scrutinizing the settlement for fairness." *Id.* at 1353. In the latter instance, the *Lynn's Food* court, relying on *Gangi*, held that the district court must determine that the proposed settlement is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1353, 1355.

Whether an FLSA settlement is legally enforceable, which the aforementioned cases addressed, is distinct from whether a court must—or should—evaluate such a proposed settlement *ex ante*. As noted, no binding caselaw in this Circuit requires a district court to assess

9

proposed FLSA settlements *ex ante*. Declining to do so, however, leaves the parties in an

uncertain position. If the parties privately settle FLSA claims and seek dismissal of the suit by

filing a Rule 41 motion, the private settlement may be held unenforceable if the employer

attempts to enforce the employees' waiver of claims per the settlement at a later date. *Cf. Martin*

*v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 256–57 (5th Cir. 2012) (enforcing private

settlement agreement entered into without judicial consent where court determined that a bona

fide dispute had existed when settlement was entered). "[U]ntil some court determines that there

was a bona fide dispute as to how much plaintiff was owed in wages, and that the offer of

judgment fairly compromises it, the employer has not eliminated its risk" of future litigation

exposure, and could ultimately find its "settlement" to be ephemeral. *Picerni*, 925 F. Supp. 2d at

372.

Although the Supreme Court has not answered the question left open in *Gangi* as to

whether a judicially reviewed and sanctioned FLSA settlement is enforceable, an affirmative

answer to this question would make ample sense. *See Lynn's Food*, 679 F.2d at 1353. If a

judicially sanctioned FLSA settlement were not enforceable, the efforts reflected by a settlement

for an employer to gain some measure of closure to its exposure and for the affected employees

to obtain payment more promptly on their FLSA claims would be frustrated. Moreover, the

strong policy preferences for finality of judgments and conservation of judicial resources would

be undermined if FLSA claims, which were settled after judicial review, were permitted to be

revived. *See Am. Sec. Vanlines, Inc. v. Gallagher*, 782 F.2d 1056, 1060 (D.C. Cir. 1986) ("Few

public policies are as well established as the principle that courts should favor voluntary

settlements of litigation by parties to a dispute."). Thus, even if judicial approval of a settlement

resolving FLSA claims in a pending lawsuit, is not required, such approval would be a

significant factor militating in favor of subsequent enforcement.

In any event, since the parties in this matter have mutually sought judicial approval of

their proposed settlement, the Court will review the settlement's FLSA related terms. *See*

*Lliguichuzhca v. Cinema 60, L.L.C.*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (considering

proposed settlement agreement "because the parties have requested judicial approval," despite

noting "it is not clear that judicial approval of an FLSA settlement is legally required"); *Duprey*,

2014 WL 2174751, at *2 n.2 (same). Consequently, the Court now turns to the factors to be

considered in evaluating whether to approve an FLSA settlement and the application of those

factors to the settlement proposed by the parties in this case. As discussed below, the Court

approves only the material FLSA-related terms of the proposed settlement.

### D.    THE PROPOSED SETTLEMENT FAIRLY RESOLVES A BONA FIDE DISPUTE

At the outset, the Court must find that the proposed settlement resolves a bona fide

dispute. *See Velez v. Audio Excellence, Inc.*, No. 10-CV-1448-ORL-22, 2011 WL 4460110, at

*1 (M.D. Fla. Sept. 21, 2011) (noting courts must first consider whether a proposed FLSA

settlement "is 'a fair and reasonable resolution of a bona fide dispute.'" (quoting *Lynn's Food*,

679 F.2d at 1354–55)), *report and recommendation adopted by* 10-CV-1448-ORL-22, 2011 WL

4460104, at *1 (M.D. Fla. Sept. 26, 2011). A settlement is bona fide if it "reflects a reasonable

compromise over issues that are actually in dispute," *id.*, since merely waiving a right to wages

owed is disallowed under *Gangi* and *O'Neil*. *See Gangi*, 328 U.S. at 115; *O'Neil*, 324 U.S. at

707. In *Lynn's Food*, the Eleventh Circuit held that district courts must "scrutinize[e an FLSA]

settlement for fairness" before it may be enforced. 679 F.2d at 1353. The *Lynn's Food* court did

not, however, elucidate how district courts should conduct such scrutiny. *See id.* In the

intervening years, courts have generally followed one of two approaches to determine whether a

proposed settlement resolves fairly a bona fide dispute over the wages and other compensation

owed.

### 1. *Relevant Factors In Considering Fairness of FLSA Settlement*

Assuming that the threshold requirement of a bona fide dispute is met, as noted, courts

have used two approaches to evaluate the fairness of an FLSA settlement. Under the first

approach, courts have considered the following six factors, which are also applied by some

courts to determine whether settlement of a class action claim is "fair, reasonable, and adequate,"

under Federal Rule of Civil Procedure 23(e)(2):

> (1) the existence of collusion behind the settlement;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the probability of plaintiff's success on the merits;
> (5) the range of possible recovery; and
> (6) the opinions of counsel.

*See, e.g., Velez*, 2011 WL 4460110, at *1; *Camp v. City of Pelham*, No. 10-cv-1270, 2014 WL

1764919, at *3 (N.D. Ala. May 1, 2014); *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241

(M.D. Fla. 2010); *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-1310, 2009 WL 3094955, at

*10 (E.D. Va. Sept. 28, 2009).

The other approach focuses upon "whether the agreement reflects a reasonable

compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by

an employer's overreaching." *Lliguichuzhca*, 948 F. Supp. 2d at 365 (quoting *Le v. SITA Info.*

*Networking Computing USA, Inc.*, No. 07-cv-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13,

2008)) (internal quotation marks omitted).  Without being closely tied to consideration of factors

employed in reviewing class action settlements, this approach takes account of "the totality of

circumstances" to determine whether an FLSA settlement is fair, reasonable, and adequate,

rather than merely a waiver of rights. *See Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Under this approach, the focus is on the fairness of the process used by the parties to reach settlement and the practical ramifications of the settlement. Specifically, the court must consider whether the proposed settlement (1) was the product of "overreaching" by the employer; (2) whether the settlement was "the product of negotiation between represented parties following . . . [a]rm's length bargaining[;]" and (3) whether there exist serious impediments to the collection of a judgment by the plaintiffs. *Lliguichuzhca*, 948 F. Supp. 2d at 365–66; *see also Le*, 2008 WL 724155, at \*1.

Under either approach, a "[c]ourt should be mindful of the strong presumption in favor of finding a settlement fair." *Velez*, 2011 WL 4460110, at \*1. Indeed, courts must be aware that "after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 806 (3d Cir. 1995); *see also Crabtree v. Volkert, Inc.*, 2013 WL 593500, at \*3 (noting that "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement") (quoting *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009)) (internal quotation marks omitted).

While both approaches have merit, the Court will apply the "totality of the circumstances" approach. The flexibility in this approach gives courts the ability to examine a settlement globally, rather than adhering to a list of enumerated factors compiled to effectuate another regime and designed to protect absent members of a class under Federal Rule of Civil Procedure 23. It also hews more closely to the ability for parties to resolve their disputes voluntarily, as embodied in Rule 41, while still offering the judicial scrutiny highlighted as

13

important by the Supreme Court in *Gangi*'s discussion of stipulated judgments.  The Court will

now apply the totality of the circumstances approach to the settlement at issue here.

### 2.       *The Terms of the Proposed Settlement*

First, the Court finds that the parties' proposed settlement represents a resolution of a

bona fide dispute.  The parties have identified several genuine disputes at issue, including (1) the

accuracy of the plaintiffs' time slips maintained by the defendants; (2) whether travel between

work sites during the work day was reasonably compensable; and (3) the amount of money, if

any, "advanced" to the plaintiffs that is not reflected on their time slips.  *See Mot.* at 3.  These

disputes show that bona fide issues persist as to the amount of wages, if any, still owed to the

plaintiffs, and that the proposed settlement "reflects a reasonable compromise over issues that are

actually in dispute," *Velez*, 2011 WL 4460110, at *1, rather than a waiver of statutory rights

prohibited by the Supreme Court's decisions in *O'Neil* and *Gangi*.  *See Gangi*, 328 U.S. at 115;

*O'Neil*, 324 U.S. at 707.

Having resolved this threshold matter, the totality of the circumstances test shows that the

proposed settlement is fair and reasonable.  The first factor considered by the *Lliguichuzhca*

court is whether the employer is "overreaching" in an attempt to secure a waiver of rights by the

employees.  948 F. Supp. 2d at 365.  The instant settlement contemplates the defendants paying

$7,000 in damages to the plaintiffs, plus an additional $8,500 in attorneys' fees.  *See* Mot. at 4.

The defendants aver that, assuming the plaintiffs are owed any additional wages, the defendants

are liable for, at most, $2,309.12 in damages, including liquidated damages.  *See id.*  The

plaintiffs aver that, if all the factual disputes are found in favor of the plaintiffs, "damages,

including liquidated damages, and attorney's fees accumulated during the litigation process

amounted to $24,000."  *Id.*  The proposed $15,500 settlement falls slightly more toward the

14

plaintiffs' end of this spectrum of potential damages calculations, assuming the defendants were eventually found to be liable for the full amount of the claimed damages and attorneys' fees. A settlement that provides total damages closer to that asserted by the plaintiffs than the defendants would not appear to be one that is a product of employer "overreaching."

The second factor, whether the settlement was reached by arm's length negotiation is clearly met here. The parties engaged in two months of mediation, through the assistance of a court-appointed mediator, to reach the instant settlement. *See id.* at 6–7. "[A]ll [p]arties were represented by counsel with extensive experience in the litigation and negotiation of FLSA disputes, and the settlement was negotiated only after appropriate investigation of the claims and defenses available to the [p]arties." *Id.* at 6. The process by which the instant settlement was reached, therefore, bears all the indicia of one that leads to a just outcome.

The final factor addressed in *Lliguichuzhca*, whether the plaintiffs would have any difficulty obtaining a judgment, is neutral as applied to this case, as no party has addressed whether the plaintiffs would be able to collect on any judgment were they to prevail at trial. *See generally* Mot. Nevertheless, it is important to note that the parties have agreed that by settling now, the plaintiffs will "obtain a recovery without further delay and without incurring additional litigation costs and additional attorney's fees and costs." *Id.* at 8. Given the substantial factual disputes that could, if resolved in the defendants' favor at trial, lead to no recovery at all for the plaintiffs, the proposed settlement takes into account adequately the inherent uncertainty of litigation and represents a reasonable resolution to the dispute.

The Court is reluctant to approve a settlement where the plaintiffs' attorneys receive more in compensation than the plaintiffs themselves, as is the case here. *See id.* at 7. In a similar situation in *Duprey*, the court noted that the attorneys in that case had voluntarily reduced their

attorneys' fees request in light of their plaintiffs' recovery. *Duprey*, 2014 WL 2174751, at *7.

Moreover, in that case the plaintiffs' counsel submitted billing records detailing the amount of

time expended on the case. *See id.* No such records have been made part of the record in the

instant matter. *See generally*, Mot.; Agreement. Yet, considering that the damages to be paid to

the plaintiffs represents "six times the overtime amount actually reflected in the time slips

maintained by Defendants" and the fact that the attorneys' fees appear to have been negotiated

separately from the amount the plaintiffs will receive, *see* Mot. at 7, the Court's reluctance is not

sufficient to overcome the presumption in favor of allowing parties to settle their own disputes,

particularly where, as here, the settlement represents a bona fide settlement of disputes of

material fact where the range of possible outcomes differs substantially.

This is not to say, however, that the Court gives its approval to all of the terms of the

settlement agreement. The clauses in the agreement requiring the plaintiffs to "stay away" from

the defendants and, in particular, "any person whom [the plaintiffs] know work for Dandan, Inc.

in any capacity," *see* Agreement ¶ 7, the mutual non-disparagement clause, *id.* ¶ 6, and the

extremely broad release, *id.* ¶ 2, may or may not be enforceable in the future. No opinion is

necessary as to the enforceability of those terms and none is given. The Court's review of a

proposed FLSA settlement is properly limited only to those terms precisely addressing the

compromised monetary amounts to resolve pending wage and overtime claims. *See Brumley v.*

*Camin Cargo Control, Inc.*, Nos. 08-1798, 10-2461, 09-6128, 2012 WL 1019337, at *5–9

(D.N.J. Mar. 26, 2012) (approving FLSA settlement in part but rejecting confidentiality and

waiver provisions in proposed settlement).[3] With that limitation on its review and approval, the

---

[3] Moreover, the Agreement contains a "Severability of Provisions" clause, which states that "[i]f any clause or provision of this Agreement is illegal, invalid, or unenforceable . . . then the remainder of this Agreement shall not be affected thereby . . . ." Agreement ¶ 10. The parties therefore clearly contemplated and agreed that if a part or

Court finds that the proposed settlement does not represent a waiver of rights that would run afoul of *Gangi* and *O'Neil*'s prohibition on such waivers. *See Gangi*, 328 U.S. at 115; *O'Neil*, 324 U.S. at 707.

## III.    CONCLUSION

For the foregoing reasons, the parties' Joint Motion to Approve Settlement Agreement is granted in part.  It is granted insofar as the Motion asks this Court to determine whether the Agreement represents a bona fide compromise of the plaintiffs' FLSA claims that is fair and reasonable in light of the FLSA's statutory requirements, which the Court answers affirmatively. The Court declines to opine on any aspect of the Agreement that does not pertain directly to the overtime compensation due to the plaintiffs.

An appropriate Order accompanies this Memorandum Opinion.

Date: June 26, 2014

_____
BERYL A. HOWELL
United States District Judge

---

parts of their Agreement were found to be "illegal, invalid, or unenforceable," the remainder of the Agreement would nevertheless remain in effect.